# CHARLESTON

CONNELL *v.* CONNELL.

*(GREEN, JUDGE, absent.)

Submitted January 26, 1889.—Decided March 4, 1889.

1. DEED—ESCROW.

Where a deed is delivered by the grantor to a third person to be held in escrow until the grantee shall have paid a specified debt, and the deed is delivered before the debt is fully paid, but it is subsequently paid, *held:* the delivery will be operative, and the deed valid, at least from the time the debt is fully paid.

2. DEED—ESCROW—ACQUIESENCE—NOTICE—LACHES.

Where those to be effected by the improper delivery and recordation of a deed were fully acquainted with the facts, and acquiesced therein for an unreasonable time, and until the rights of third parties have intervened, they will not be permitted to avoid such deed.

3. NOTICE.

A case in which the trustee and *cestui que trust* are held to be purchasers for value without notice under the evidence and special facts and circumstances proven.

4. NOTICE.

To charge a *bona fide* purchaser with notice, either express or implied, the notice must be something more than a vague statement that the vendor's title is subject to an equity.

Statement of the case by SNYDER, PRESIDENT:

John H. Connell on October 7, 1886, filed his bill in the Circuit Court of Kanawha county against Daniel F. Connell, Roman Pickens and W. S. Laidley, trustee, in which he avers, that in the year 1865 he contracted to purchase from Davis H. Estill a house and lot on Quarrier street in the city of Charleston at the price of $2,000.00, of which sum he paid about $500.00 and, in order to get the title from Estill, his father, J. S. Connell, raised a balance the $1,500.00 by borrowing the same from D. F. Connell, to whom he gave his note therefor dated April 1, 1865; and that there-

*On account of illness.

upon Estill conveyed the lot to said J. S. Connell upon the agreement between the said J. S., Daniel and the plaintiff, that said J. S., the father of Daniel and the plaintiff, was to hold the legal title to said house and lot as security to Daniel for said $1,500.00 until paid, but in trust for the plaintiff for any surplus in case of a sale to pay said $1,500.00. The plaintiff went into possession of the property about that time and has resided upon it ever since. A year or two before the death of his father the said D. F. Connell requested, that the said house and lot be deeded to him with the same trust and understanding, that he should hold the title as security for said $1,500.00, and with this understanding the father executed and acknowledged a deed to Daniel for the property and delivered it to his daughter, Sarah, to keep until a full settlement of accounts was had between him, Daniel, and the plaintiff. The father died leaving the deed in the possession of his daughter; and five or six weeks thereafter Daniel got it from her and had it recorded, but still admitting, that he held the property as security for the money loaned, or any balance there might be due him on settlement, and such has always been the understanding; and that on such settlement and the payment to Daniel of any balance found due him the property was to be conveyed to the plaintiff free from any claim of Daniel. No such settlement has ever been made, though efforts to do so have been made without effect. Plaintiff believes that upon a fair settlement between him and Daniel there will be due to him a sum sufficient to pay any balance that may be due to Daniel on said $1,500.00; that said Daniel is not therefore the true owner of said house and lot, but only the holder of the legal title in trust as aforesaid. The plaintiff further avers, that D. F. Connell by deed dated August 29, 1884, conveyed said house and lot and another lot of nine acres of land worth $2,800.00 to W. S. Laidley, trustee, to secure to Roman Pickens the payment of a note of $3,000.00 which is now due, and said Laidley has advertised the property for sale under said trust-deed; that said house and lot are worth $5,000.00 and, if sold as advertised, would be sacrificed; that the Ruffner Bros., as agents of Pickens, loaned said $3,000.00 to D. F.

Connell for Pickens, and the plaintiff gave them notice, that said D. F. Connell did not own said property.

The bill prays that W. S. Laidley, trustee, be enjoined from selling said house and lot; that all proper accounts be ordered and taken; and that said D. F. Connell be required to surrender such title as he holds to said house and lot, and convey the same to the plaintiff *etc.* The injunction was awarded as prayed in said bill.

The defendant Pickens answered denying the allegations of the bill, and especially denying, that Ruffner Bros. had ever been his agents, or that they had made the loan to D. F. Connell for him; or that the deed from J. S. Connell to D. F. Connell had never been delivered; or that the said house and lot had been conveyed to D. F. Connell upon any trust secret or otherwise; or that, if such trust existed, he had any notice of it; and averring, that he was a purchaser for value without notice; and he also denied all the other material allegations of the bill.

Subsequently the plaintiff filed an amended bill, the time of filing which is not disclosed by the record, but, as it appears to have been sworn to on July 2, 1887, it was probably filed after the depositions had been taken and filed. In this amended bill the plaintiff avers by way of supplement, that W. S. Laidley, trustee, before the trust-deed to him was executed, had notice and was advised of the equities of the plaintiff in said house and lot; and he was informed that D. F. Connell was not the true owner thereof; and also that since the filing of his original bill the plaintiff has been informed and now distinctly charges, that the legal title to said house and lot never vested in D. F. Connell; that the deed thereto from J. S. Connell was never delivered either by said J. S. Connell during his life, or by any one authorized to do so after his death; but that after the death of said J. S. the said D. F. Connell wrongfully obtained the possession thereof from his sister, Sarah E. Connell and improperly had the same recorded; that the said deed is null and void, and the legal title to said property is vested in the heirs of said J. S. Connell, deceased, for the use of the plaintiff as the real and true owner subject to a charge in favor of D. F. Connell for any balance due on the purchase-money advanced by him

after a full settlement between him and the plaintiff. There is no prayer to this bill.

Pickens answered this bill also; and all the other defendants filed their separate answers to the plaintiff's bill and amended bill. D. F. Connell after detailing the transactions and state of accounts and settlements between himself and the plaintiff and exhibiting papers signed by the plaintiff, which show, that the plaintiff is largely indebted to him over and above the $1,500.00 advanced for the purchase of the house and lot, avers, that in the year 1868, after the plaintiff had sold a part of the aforesaid lot for $450.00 the said J. S. Connell offered to convey the residue thereof to the respondent upon the surrender to him of the note held by respondent for the purchase-money, amounting then to $1,790.00. Respondent accepted this offer and delivered to his father the said note, and his father agreed to convey to him said lot. Not long after this his father died, and shortly thereafter the said deed was delivered to him by a member of the family, and he with the full knowledge and consent of the plaintiff and the other heirs of his father had it recorded, and he has ever since claimed and owned said property thereunder without notice or knowledge of any adverse claim until after the execution of the aforesaid trust-deed to W. S. Laidley, trustee; and he positively denies, that the plaintiff has any right or title to said house and lot either legal or equitable.

The defendent, W. S. Laidley, in his answer, which is sworn to by him, says: "As to the allegation, that this trustee was notified before the loan mentioned was made, and before the deed of trust was executed, of the plaintiff's equities as set out in said bill, this respondent remembers nothing whatever * * * and he does not remember of having any consultation with J. H. Connell before the deed was written, or with any one else." He further says he sold the nine acres of land mentioned in the trust-deed on October 9, 1886, for $1,165.00.

All the answers were replied to generally. On April 9, 1886, the cause was finally heard on the bill, and amended bill, the demurrer thereto, the answers of all the defendants, replications, exhibits and depositions; and thereupon the

court entered a decree dissolving the injunction and dismissing the bill, at the plaintiff's costs.

From this decree the plaintiff has appealed.

*E. B. Knight* and *J. H. Connell* for appellant.

*Brown & Jackson* and *W. A. McCorkle* for appellees.

SNYDER, PRESIDENT:

If the deed from J. S. to D. F. Connell vested in the latter the legal title to the house and lot, and the appellees Roman Pickens, and W. S. Laidley, trustee, are purchasers of the property without notice of any equity or right thereto in the plaintiff, then it is wholly irrelevant to inquire in this cause as to the equities between the plaintiff and D. F. Connell in respect to said property, or as to the state of accounts between them. I shall therefore address myself to the following questions :—1. Was D. F. Connell vested with the legal title to said house and lot by the deed to him from J. S. Connell, or otherwise ?—2. Were the appellees Pickens and Laidley purchasers without notice of any equity in the plaintiff in respect to said property ?

1. The record shows that this property was in the year 1865 conveyed by D. H. Estill to J. S. Connell. On July 9, 1868, J. S. Connell and wife had a deed prepared, absolute on its face conveying said property with covenant of general warranty to D. F. Connell in consideration of $2,500.00, the payment of which is therein acknowledged, which deed was on July 10, 1868, duly acknowledged by the grantors for record. The only evidence in respect to the delivery of this deed is that of Sarah E. Connell, the daughter of the grantor. She testifies, that her father delivered to her this deed and told her, that it was a deed he had made to D. F. Connell for J. H. Connell's house, and that he did not intend delivering it yet. She put it away and kept it, until after her father died. She did not know what to do with it. She mentioned the matter to her brother Daniel, and he told her to give it to him, which she did. On cross-examination she says her father told her it was a deed, that he had made to D. F. Connell on condition, that he would pay a certain debt, that her father was security for, and that he had noth-

ing but D. F. Connell's word for it, and he was not going to deliver up the deed, until D. F. Connell fulfilled the conditions. So far as she can remember, the debt referred to was the Babbitt & Good debt. Other testimony in the cause shows that this deed was prepared by the plaintiff, J. H. Connell, and that the Babbitt & Good debt has been paid, though a part of it was paid by D. F. Connell, after the deed had been delivered to him. J. S. Connell died September 24, 1869.

D. F. Connell at the time resided in Ohio, and on his coming to Charleston soon after his father's death the deed was delivered to him, and he had it duly recorded in Kanawha county on November 10, 1869. The property has ever since been on the tax-books of the county in the name of D. F. Connell, and he has paid the taxes thereon. Not only the plaintiff but also the other children and heirs of J. S. Connell, knew that said deed had been delivered to Daniel, and that he claimed the property as his own; and none of them, so far as the record shows, ever questioned the delivery or validity of said deed. In a letter written by the plaintiff to Daniel on November 10, 1868, a few months after said deed had been written by him, he says: "I was applied to to-day to know if my house was for sale, and what the price was. I informed the party that I had let you have it, and that your price was $3,000.00."

I think this evidence sufficient to prove, that said deed was properly delivered to D. F. Connell. If it was delivered upon any condition, it must have been upon the payment of the Babbitt & Good debt; and, whether that debt was paid before or after the delivery of the deed, the delivery would certainly be operative, and the deed valid, from the time the debt was in fact paid. 3 Washb. Real Prop. 313, 328. But further the plaintiff is estopped at this late day from denying the validity of said deed. He had full notice for nearly eighteen years, that said deed was upon the public records of the county, and he not only took no action to set it aside but never questioned its validity, until the property passed into the hands of a purchaser from his brother. Delay in the assertion of a right, unless satisfactorily explained, operates in equity as evidence of assent, acquiescence or waiver; and

this rule applies with peculiar force, when the attempt is made to impeach a transaction like the one now in question. *Trader* v. *Jarvis*, 23 W. Va. 100; *Doggett* v. *Helm*, 17 Gratt. 96; *Evans' Appeal*, 81 Pa. St. 302; *Hayward* v. *Bank*, 96 U. S. 611.

2. We come now to the inquiry: Were Pickens and the trustee, Laidley, purchasers without notice? The plaintiff in his original bill does not allege or claim, that Laidley had notice. In that bill the only allegation of notice is, that the plaintiff gave notice to Ruffner Bros., the agents of Pickens, who loaned the money to D. F. Connell. The first claim which we have from the plaintiff of any notice to Laidley is in the amended bill, which was evidently filed after the depositions of the Ruffners had been taken denying, that they were the agents of Pickens. This fact is significant; for if the plaintiff went to Laidley, as he claims, to notify him of his equities, it is not likely he would have omitted that important fact from his original bill.

The plaintiff in his deposition, taken after the depositions of Pickens and Ruffners had been filed, says, that he never had any conversation with Pickens previous to the loan in reference to it and knew nothing of it until about August, 1886. He further says, that, before the loan was made, he was informed, that his brother was negotiating with Pickens through the Ruffner Bros. for a loan of $3,000.00 and that his brother had gone away in a hurry and wanted him to give Mr. Laidley any information he might want about the title to the property; that he then went immediately to the Ruffner Bros. "and told them about it and told them, that I claimed the property and was not willing for it." He further says: "I did not wait for Mr. Laidley to come and see me, but I went to see Mr. W. S. Laidley, trustee in the deed from D. F. Connell for Pickens, the same or the next day. I saw him at the clerk's office. I told him of my claim to the property, where I resided, there on Quarrier street. He remarked, that D. F. Connell had another property on Quarrier street. I told him, no; that he had sold that to Ham. Morris. This was some place between the 27th and last of August, I think, 1884." He further says, he had two or three conversations with Pickens, after the loan fell due, in

regard to the payment of the interest on it. In another part of his deposition the plaintiff says, that in 1879 his brother offered to give Polsley a trust-deed on this property, and that he told his brother "that he [I] would not object to his giving a lien on it to Polsley."

This is the whole of plaintiff's testimony in regard to the question of notice, and it is the only evidence on his behalf in the record. On the other hand we have the testimony of several witnesses, which tends either directly or indirectly to contradict the plaintiff, and to show, that Pickens was a purchaser without notice. The testimony of the Ruffner Bros. as well as that of Pickens himself clearly proves, that the Ruffners were not the agents of Pickens and had no concern or interest in the money loaned or the trust-deed. All that the record shows is, that at the time the loan was made Pickens had some money in the hands of Ruffner Bros., and upon inquiry of them by D. F. Connell they told him, that it was probable, he could borrow some money from Pickens. Connell then saw Pickens and obtained the loan, and Pickens give him an order on Ruffner Bros., and on that order they paid the money to Connell. This of course did not make Ruffner Bros. the agents of Pickens ; and therefore, even if the plaintiff had given them notice of his claim to the house and lot, that would not be notice to Pickens or in any degree affect him as a *bona fide* purchaser.

The sole question therefore is : Did Laidley, the trustee, have notice ? We have already seen, that Laidley in his sworn answer says, that he remembers nothing whatever of having any conversation with the plaintiff or notice of the plaintiff's equities, before the trust-deed was executed. D. F. Connell testifies, that he told Mr. Laidley to investigate the title and either give to him his deed for the property or referred him to the records for that purpose. Pickens testifies, that before the loan was made to D. F. Connell he had a conversation with the plaintiff on the subject ; that the plaintiff appeared to be very anxious for his brother to get the money ; and that "he did not apprise me at that time, that he had a claim against the property." And then, in answer to the question : "When did he first tell you, that he had any claim against this property?" says : "That was about six months ago,

may be a little longer, and may be not so long." This witness further testifies, that, after the loan had been made, he had several conversations with the plaintiff, and he said, that his brother was going to pay it; that the plaintiff never told him, he had any claim to the property, until the money become due, and he wanted the interest on it. He further says, that Laidley was not his retained counsel, and he does not remember, that he employed him to examine the title to the property.

It seems to me that this testimony and the facts and circumstances attending the transaction fully overcome the pretensions of the plaintiff, that he notified Laidley of his claim. It is not reasonable to suppose, if he had done so, that Laidley could have forgotten it; and it is alogether improbable, that with such notice Laidley would have passed the title and become the trustee in the trust-deed without informing Pickens; and still less probable, that Pickens, if informed of any defect in the title, would have made the loan upon such security. Pickens testifies positively, that he had a conversation with the plaintiff in respect to the matter, before the loan was effected, and that the plaintiff instead of objecting appeared to be very anxious for his brother to get the money. This is corroborated by the testimony of plaintiff, who admits, that he had no objection to his brother giving a trust-deed on this property to Polsley. From the whole testimony, facts and circumstances it seems to me to be apparent, that the plaintiff, at the time the loan was effected, made no objection and gave no notice of his claim to the property; but when the debt became due, and Pickens wanted his money, then for the first time he gave notice of his claim to the property. But, be this as it may, I am clearly of opinion, that the plaintiff has failed to establish the fact, that he gave such notice, or that either Pickens or Laidley had such knowledge, as ought to deprive them of the position and rights of purchasers for value without notice.

To charge a *bona fide* purchaser with notice either express or implied, the notice must be something more than a vague statement, that the vendor's title is subject to an equity. It must be such information as to bind the conscience of the purchaser. Wade, Notice, § 29. A court of equity will not be astute to charge a constructive trust upon one, who has

acted honestly and paid a full and fair consideration without notice or knowledge. *Wilson* v. *Wall*, 6 Wall. 83, 90; *Mundy* v. *Vawter*, 3 Gratt. 518.

Having arrived at this conclusion, it is unnecessary in this cause to determine or consider the question raised and discussed in respect to the controversy as between the plaintiff and the defendant D. F. Connell; and as to those questions we decide nothing. If the plaintiff has any rights or equities in the said property as against D. F. Connell or has any other demand or claim against said D. F. Connell, they are such as do not concern the other defendants in this cause; and they must therefore be settled in a suit between themselves.

For the reasons aforesaid the decree of the Circuit Court must be affirmed; but as a matter of precaution, though perhaps an unnecessary one, the said decree is affirmed without prejudice to the right of either the plaintiff or the defendant, D. F. Connell, to institute and prosecute any proper suit at law or in equity to settle any claim or equities between them in respect to the house and lot in the bill mentioned, or any other claims or accounts existing between them, which are referred to in the pleadings in this cause.

Affirmed.