## ALLEN ET AL. v. POWELL.

[No. 9,523. Filed February 23, 1917. Rehearing denied June 29, 1917. Transfer denied November 13, 1917.]

1. New Trial.—*Motion for.*—*Time for Filing.*—*Statute.*—Under §587 Burns 1914, Acts 1913 p. 848, providing that application for a new trial may be made at any time within thirty days from the time the verdict or decision is rendered, but, if the term of court is adjourned before the expiration of the thirty-day period, the motion may be filed in the office of the clerk of the court, and not afterwards, where the term at which judgment was rendered adjourned and a new term convened within the thirty-day period, the motion for new trial was properly filed with the court, the proviso for filing with the clerk applying only when the motion is filed during vacation and within the thirty days allowed by the statute. p. 604.

2. Evidence.—*Res Gestae.*—In an action to quiet title, where plaintiff claimed that her grantee wrongfully obtained possession of the deed, which was signed and acknowledged but blank as to the grantee, and inserted his own name in the blank left for that of the grantee, plaintiff was properly permitted to testify to statements made by such grantee, in the absence of defendants, on the occasion of her visit to his office to discuss a proposed sale of the land by him for her, such statements being *res gestae*. p. 609.

3. Trial.—*Instructions.*—"*When.*"—In an action to quiet title, where plaintiff contended that her grantee wrongfully procured

the·deed and inserted his name as grantee, an instruction that the burden was on grantee to prove her contention, "but when she has done so, no other person can gain any rights" under the deed, is not erroneous as assuming that plaintiff had sustained the burden of proof, the word when being used in the sense of "provided," or "if." p. 610.

4. DEEDS.—*Delivery.—Wrongful Possession.*—Where one steals a deed to land and wrongfully inserts his name as grantee, there is no delivery. p. 612.

5. DEEDS.—*Delivery.*—Where the owner of land voluntarily left a deed, which was properly signed and acknowledged but blank as to the grantee, in her agent's possession so that he might hold it for her until the abstracts were examined, and a conveyance might be subsequently completed by her, there was no delivery to the agent. p. 612.

6. DEEDS.—*Delivery.—Wrongful Possession.*—A writing in the form of a deed that passes into the possession of the named grantee without the knowledge, consent, or acquiescence of the grantor, and with no intent to deliver it, is ineffectual to pass title to the grantee. p. 612.

7. ESTOPPEL.—*Estoppel by Silence.*—A person may be estopped by his silence, where it is his duty and there is opportunity for him to speak, or by his passivity where an obligation and an opportunity to act exists, but he must have knowledge of the facts and his rights. p. 614.

8. ESTOPPEL.—*Estoppel by Acquiescence.*—In an action to quiet title, where it appeared that plaintiff executed a deed, which was blank as to the grantee, and left it with her agent, who wrongfully filled in his own name and sold the land, the situation was sufficient to present an issue for the jury as to whether plaintiff was estopped by her conduct in not immediately asserting her rights to deny the validity of the deed as against innocent purchasers who acquired title subsequently to her discovery of the agent's action. p. 614.

9. ESTOPPEL.—*Equitable Estoppel.*—Where one of two innocent persons, each guiltless of an intentional moral wrong, must suffer a loss occasioned by the wrongful conduct of another, the loss must be borne by him whose conduct enabled the injury to be inflicted. p. 614.

10. ESTOPPEL.—*Estoppel by Laches.*—Where a person named as grantee in a deed, of which there is no legal delivery, wrongfully obtains possession of it and causes it to be recorded, the grantor, on acquiring knowledge of the facts, is required to act promptly to prevent innocent third persons from acting to their prejudice in relying on the record, and by failing to do

so such grantor will be estopped by laches from asserting his title against an innocent purchaser. p. 615.

11. ESTOPPEL.—*Burden of Proof.*—One relying on estoppel has the burden of establishing all the facts necessary to constitute it. p. 616.

12. ESTOPPEL.—*Estoppel by Laches.—Burden of Proof.—Instruction.*—In an action to quiet title, where it appeared that grantor knew that she had not delivered the deed therefor, but that her grantee had fraudulently procured such deed and, after inserting his own name as grantee, had it recorded, and she remained inactive for several weeks after acquiring full knowledge of the facts, during which time conveyance was made to innocent purchasers, who relied on the record, such facts were sufficient *prima facie* to constitute estoppel, and the burden was upon the grantor to show any mitigating facts and circumstances to avoid the estoppel, so that an instruction that the burden was on the innocent purchasers to prove that there was no such mitigating circumstances was erroneous. p. 616.

From Johnson Circuit Court; *William E. Deupree,* Judge.

Action by Malvina Powell against Oscar N. Allen and others. From a judgment for plaintiff, the defendants appeal. *Reversed.*

*Remy & Berryhill,* for appellants.
*Bingham & Bingham,* for appellee.

CALDWELL, J.—The appellee brought this action in the Superior Court of Marion county, to quiet her title to lots Nos. 28, 29, 30, 31, 32, 33, 34, 35 and 36 in the Crestline addition to the city of Indianapolis. The complaint is in two paragraphs, the first declaring on a legal title, and the second on an equitable title. The Allens disclaimed. Appellants Clarence H. and Mary E. Beard and Mary J. Glynn answered by general denial. The cause was venued to the Johnson Circuit Court, where a trial resulted in a verdict and judgment for appellee, quieting her title as prayed. The errors presented and discussed arise on the overruling of the motion for a new trial.

A preliminary matter must be considered: Appellee insists that the motion for a new trial was not filed as required by the statute, and that as a conse-

1. quence, appellants cannot be heard to complain of the court's action in overruling it. The statute as amended in 1913 governs. Acts 1913 p. 848, §587 Burns 1914. The statute is in substance that an application for a new trial may be made at any time within thirty days from the time when the verdict is rendered, there being a proviso that if the term of court is adjourned before the expiration of such period, the motion may be filed in the clerk's office within such period, but not afterwards. The facts are as follows: The verdict was returned at the February term, 1914, of the trial court. At the March term and within the thirty-day period appellants applied for a new trial in the usual manner by presenting and filing the motion in open court. Appellee contends that, notwithstanding that the interim between the two terms had passed, and although court had convened for the March term, appellants were authorized to file the motion only in the clerk's office, and that the presenting and filing of it in open court, it not having theretofore been filed in the clerk's office, was without warrant of law.

Since 1881, and prior to the amendment of 1913, the period of time within which an application for a new trial might be made depended somewhat on the length of the term of court at which the verdict or decision was rendered, and the extent of the vacation immediately subsequent thereto. The duration of the terms of court and of intervening vacations is not uniform in the various circuits or in many instances in the same circuit, certain terms and vacations in any year being longer than others. It resulted under such prior statutes that there was a lack of uniformity in the length of the period within which a party litigant might apply for a

new trial. We think it apparent that the legislative purpose that actuated the amendment of 1913 was a reduction of the practice to uniformity in the matter indicated, to the end that litigation might thereby be expedited and moved to its conclusion. Hence the establishing of the thirty-day period.

A statute yet in force, and which governs in the ordinary application for a new trial, provides that "the application must be by motion upon written causes filed at the time of making the motion." §562 R. S. 1881, §588 Burns 1914. Under such statute, and the statutes in force prior to the amendment of 1913 fixing the time within which an application for a new trial might be made, it was held that a motion for a new trial must be presented to and entered by the court, and that the mere filing of it with the clerk was not sufficient. *Emison* v. *Shephard* (1889), 121 Ind. 184, 22 N. E. 883; *Levey* v. *Bigelow* (1893), 6 Ind. App. 677, 34 N. E. 128. Such statutes authorized an application for a new trial only in term time. It is therefore apparent under such statutes as interpreted that a requirement that the motion be presented to the court deprived a party litigant of none of his rights. But, as we have indicated, the amendment of 1913 fixes a definite time limit within which such application must be made, or not at all. Under the amendment all the thirty-day period is available. But the whole or a substantial part of the period may fall in vacation. Under such circumstances to require that the motion be presented to the court would in some instances entirely and in other instances very materially limit the rights of a party desiring to move for a new trial, as otherwise fixed by the amendment, and hence the necessity for the provision that, if the term of court has adjourned before the expiration of the thirty-day period, the motion may be filed in the clerk's office within such period. The thirty-day pe-

riod may be entirely included in the term at which the verdict or decision is rendered, or it may extend into the succeeding vacation, or it may reach across such vacation into the succeeding term. The proviso of the amendment does not purport to apply to the first case. Literally, such proviso may be broad enough to cover the second and third cases. Such a broad interpretation, however, is not necessary in order that full effect may be given to the evident legislative purpose that all the thirty-day period be available to the party moving for a new trial. Where all the period limited comes within the term at which the verdict or decision is rendered, the application should be made to the court. Where a part of such period extends into the succeeding vacation, the application, if made at such term, should be made to the court; if made in that part of the period that falls in vacation, the motion may be filed in the clerk's office as specified by the amendment. If the thirty-day period extends into the succeeding term, the application, if made at such term but within such period, should be made to the court. Such a holding gives full effect to the amendment of 1913, construed in the light of the legislative purpose that gave rise to it, and also gives effect to §588, *supra,* as construed by the courts, modifying it only to the extent necessary to carry out such legislative purpose. It follows that the application for a new trial here was made in the proper manner, and that the ruling on the motion is before us for review.

An understanding of the questions presented and discussed under the motion for a new trial necessitates a statement of the facts. The material part of the evidence is substantially as follows: On and prior to July 21, 1913, appellee was the owner of the lots described in the complaint. On July 22, 1913, an instrument purporting to have been signed and acknowledged by ap-

pellee, and purporting also to convey the lots from appellee to Crawford, was recorded in the recorder's office of Marion county. Such instrument is the deed hereinafter described as having been signed and acknowledged by appellee in blank as to the grantee. The evidence respecting the subsequent apparent conveyances of the lots as disclosed by the deeds of record in the recorder's office consisted of an agreed stipulation at the trial not entirely clear in its provisions, but to the following effect: July 28, 1913, recorded July 29, 1913, Crawford to Allen, all the lots; August 26, 1913, recorded August 27, 1913, Allen and Mary N. Allen, his wife, to Beard, all the lots; August 30, 1913, recorded September 4, 1913, Beard and Mary E. Beard, his wife, to Mary J. Glynn, describing part of the real estate in controversy; August 30, 1913, recorded September 5, 1913, Beard and wife to Josephine Fickle, lot No. 31. Appellee commenced this action September 6, 1913, and on that day duly filed *lis pendens* notice. The stipulated agreement respecting apparent conveyances and the proceedings affecting the lots subsequently to September 6, 1913, was in substance as follows: September 23, 1913, recorded November 6, 1913, Beard and wife to Harry C. Gauker, lots Nos. 32, 33, 34, 35 and 36. September 10, 1913, Mary E. Beard commenced an action against Gauker and wife to establish and foreclose a purchase-money lien against the lots last named, and duly filed a *lis pendens* notice. Fickle and the Gaukers were not made parties to this proceeding. The evidence, at least inferentially, establishes that no one actually occupied the lots and that actual possession did not follow any of the conveyances.

Appellee lived at Newcastle. Crawford maintained an office at Indianapolis, where he was doing business as the Crawford Land Company. Appellee was not acquainted with him. Through an advertisement she got

into communication with him, resulting in his inform-
ing her by letter that he had a purchaser for the lots
at $8,000. By arrangement with him, she came to his
office July 21, 1913, for the purpose of consummating
the sale and conveyance of the lots to the unknown
purchaser. Prior thereto by direction of Crawford, she
had caused abstracts of title to the lots to be brought
down to date. She also caused a warranty deed, blank
as to the grantee, to be prepared, and signed and ac-
knowledged it. Arriving at Crawford's office, she in-
troduced herself, and delivered the abstracts to him.
Crawford said he would have to send them to Chicago
for examination, and directed her to return on Friday,
July 25. Appellee testified that at Crawford's request
she took the deed from a small hand satchel, in which
she was carrying it, and handed it to him for examina-
tion. After inspecting it, he returned it to her, and
she placed it in the satchel. She testified to circum-
stances affording Crawford an opportunity surrepti-
tiously to take the deed from the satchel. When she
left the office she carried the satchel with her, believing,
as she testified, that it contained the deed. Subse-
quently Crawford communicated with her, and directed
her to return Tuesday, July 29, to complete the convey-
ance. She called at Crawford's office on that day, but
did not see him. Returning the next day, she talked
with Mr. Pixler, who was Crawford's attorney, and
occupied an office with him, and informed him in sub-
stance that she had come to complete the conveyance.
Pixler sent for Mr. Berryhill, Allen's attorney, and the
three of them went to the recorder's office, where Mr.
Berryhill got the deed which appellee had theretofore
signed and acknowledged, and appellee thereupon ad-
mitted that she had signed and acknowledged it. The
deed had originally been prepared by filling the blanks
therein in typewriting. When Berryhill presented it to

her at the recorder's office, it appeared that Crawford's name had been inserted in typewriting as grantee, the printing being similar in color to that used in the preparation of the deed. The deed had also been recorded. Pixler informed appellee that Crawford had sold the lots and absconded. Appellee testified that she did not know that Crawford had the deed until she went to the recorder's office; that she had not delivered it to him at any time, except temporarily, as above stated, and that she had not received any consideration for the conveyance. She testified also that Mr. Pixler and Mr. Berryhill and his law partner, Mr. Remy, and others informed her that her only remedy was to prosecute Crawford, as he had conveyed the premises to innocent parties. These gentlemen, with others, testified that appellee admitted that she had voluntarily left the deed, blank as to grantee, in Crawford's hands. The evidence was sharply conflicting on the question of whether she did leave the deed in Crawford's possession, or whether he obtained the possession of it without her knowledge. On July 28, 1913, Crawford traded the lots to Allen, and received as consideration a large diamond, and a conveyance of other real estate, subject to a mortgage, and a small sum of money. In this transaction Pixler acted as attorney for Crawford, and Remy and Berryhill as attorneys for Allen. Subsequently other conveyances were made as hereinbefore set out. There was evidence tending to show that Allen and his grantees in succession, who are parties to this proceeding, were innocent purchasers of the lots.

Appellants complain of the court's action in permitting appellee, as a witness, to testify to statements made by Crawford to appellee on the occasion of her visit to his office on July 21, and in the absence of appellants. These statements were in sub-

2.

VOL. 65—39

stance that when she handed him the abstracts he said he would have to send them to Chicago for examination; that he asked her to return to his office at a named time, and that he asked her whether she brought the deeds with her. We might very consistently dispose of the questions raised respecting the hearing of this testimony by holding the admission harmless, if erroneous, but we do not believe there was any error in hearing it. These statements accompanied and explained certain acts and transactions relevant to matters in issue. These acts and transactions were the delivery of the abstracts to Crawford, the postponing of the consummation of the conveyance to a subsequent day, and the fact that Crawford had knowledge of the existence of the deed, and that he had it in his possession. It is not contended that the court improperly heard testimony respecting these acts and transactions. The first and second statements are explanatory of the necessity of appellee's second visit to the office, and were perhaps indicative of a purpose on Crawford's part to obtain title to appellee's property by improper means. The third statement, the inquiry about the deed, is explanatory of appellee's act in delivering it at least temporarily into Crawford's possession. The statements were so closely connected with acts done and transactions had as to be *res gestae*, and therefore properly heard. Jones, Evidence (2d ed.) §358; 10 R. C. L. 794, 983.

Appellants contend that the court erred in the thirteenth instruction, given on its own motion. This instruction is to the effect that the burden was on

3. appellee to prove her claim that the deed was obtained from her surreptitiously, the name of the grantee inserted, and the deed placed of record without her knowledge or consent, "but when she has done so, no other person can gain any rights under it." The in-

·struction does not deal with the question of estoppel. The sole objection urged against it is that by the quoted portion the court assumed that appellee had proven that the deed ·was obtained from her surreptitiously, etc. Appellants do not correctly interpret the instruction. The meaning assigned to the word "when" determines the question. This word is frequently used in the sense of "provided," "in case of," "and if," or "if." 40 Cyc 920 and notes. In our judgment it is so used here. Appellants use the word "when" in this sense in points 5, 8 and 9 in their brief. The instruction under consideration means in substance "but if she has done so," etc. It does not assume. It is an illustration of those instructions that are correct as far as they go. To be entirely complete in its dealing with the subject-matter, it should contain a proposition in effect that if appellee failed to make the proof indicated, other persons might gain rights under the deed. The alternative proposition was presented by other instructions.

The sixth instruction given at appellee's request is as follows: "One of the contentions of the defendants is that plaintiff on the 31st day of July, 1913, learned that the deed in question had been properly recorded, and that she took no steps to recover the property in question or to give notice of her claim to same until September 6th, 1913, and that as to those taking title subsequent to July 31st, 1913, plaintiff is estopped. But before such knowledge on the part of plaintiff can be held to have estopped her it must appear that plaintiff knew or ought to have known, under the circumstances of this particular case, of her legal rights in the premises in time to have taken the action necessary on her part to have protected said defendants, and the burden of proving such knowledge on the part of plaintiff is upon said defendants."

Appellants contend that by this instruction the court

erroneously placed upon them the burden of proof as indicated. As we have said, appellee, on July 21, 1913, signed and acknowledged the deed, in blank as to the grantee. On or about July 31, she learned that Crawford's name had been inserted as grantee, that he had executed a deed to Allen, and that both deeds had been placed on record. Appellee at no time authorized the insertion of Crawford's name as grantee or the conveyance of the premises to Allen. There is no controversy respecting these facts. There is controversy as to whether appellee voluntarily left the deed in Crawford's possession, or whether he obtained it in some improper manner, and without her knowledge and consent. She testified to the latter state of facts. She was not corroborated. A number of witnesses, including persons apparently disinterested, testified to statements and admissions tending to establish the former state of facts. There was also some substantive evidence to that end.

4. If Crawford stole the deed, and wrongfully inserted his name as grantee, such facts, of course, would not constitute a delivery of the deed. If appellee voluntarily left the deed in Crawford's
5. possession, and it was so left for the sole purpose that he might hold it for her until the abstracts were examined and approved, and that the conveyance to the undisclosed purchaser might be completed by her at a subsequent visit, a delivery of the deed to Crawford as grantee was not contemplated or intended. Under neither supposition then was there a delivery of the deed. A valid delivery of a deed consists of an act and an intent. *Stokes* v. *Anderson* (1889), 118 Ind. 533, 21 N. E. 331, 4 L. R. A. 313. Here, under the one supposition, both the act and the intent were lacking; under the other, a delivery was not intended. A
6. writing in the form of a deed that passes into the possession of the named grantee, without the

knowledge, consent, or acquiescence of the grantor, and with no intent thereby to deliver it, "is no more effectual to pass title to the grantee than if it were a total forgery, although the instrument may be spread upon the record, and innocent purchasers are not protected." *Henry* v. *Carson* (1884), 96 Ind. 412; *Fitzgerald* v. *Goff* (1884), 99 Ind. 28; *Schaefer* v. *Purviance* (1902), 160 Ind. 63, 66 N. E. 154. It follows that neither Crawford nor his grantees in succession can base a valid title upon the instrument signed and acknowledged by appellee, unless the surrounding facts and circumstances enforce the application of some countervailing equity to that end. The court by the instruction under consideration recognized the existence of such an equity as an abstract principle, and guided the jury in its application to this case. The facts by which such equity is aroused, if at all, are as follows: Appellee, although she had full knowledge on or about July 31 respecting the state of the record in the recorder's office, took no steps prior to September 6 to protect herself or those that might thereby be misled, or at least the record here is silent as to any such steps taken by her. Certain other facts also should be considered in determining the ultimate question of whether the court by the instruction under consideration erred in placing the burden of proof on appellants, as indicated. These facts are as follows: Certain attorneys who represented Crawford and Allen respectively in the transaction by which the former executed the deed to the latter, testified that on July 31 they informed appellee that her sole remedy was a prosecution of Crawford. Other attorneys on that day advised her that they were uncertain as to her remedy. The attorneys of both classes testified that they based their advice on statements made by appellee to them that she voluntarily left the deed in Crawford's possession.

A person may be estopped by his silence, where it is his duty and there is an opportunity for him to speak, or by his passivity where there exists an obligation and an opportunity to act. Such application of the principle of estoppel is sometimes characterized as estoppel by silence or by standing by. In order that such an application of the principle may be effectively invoked, it is essential that the person charged have knowledge of the facts and of his rights. *Anderson* v. *Hubble* (1884), 93 Ind. 570, 47 Am. Rep. 394; 10 R. C. L. 692; Bigelow, Estoppel (6th ed.) 648.

It is a conceded fact that regardless of the means by which Crawford possessed himself of the deed involved here, appellee, on or about July 31, had full knowledge of the state of the record in the recorder's office, and that some innocent person might be deceived to his injury thereby. Such a situation is sufficient to present the question recognized by the court in the instruction under consideration, whether appellee is estopped by her conduct on that occasion and subsequently thereto to deny the validity of the deed as against innocent purchasers. The solution of the question depends on the attending facts and circumstances not clearly revealed by the record before us. It is also a familiar principle in equity that where one of two innocent persons, each guiltless of an intentional moral wrong, must suffer a loss occasioned by the wrongful conduct of another, the loss must be borne by that one of the two persons who by his conduct enabled the involved injury to be inflicted. *Moore* v. *Moore* (1887), 112 Ind. 149, 13 N. E. 673, 2 Am. St. 170; *Lucas* v. *Owens* (1888), 113 Ind. 521, 16 N. E. 196. The evidence here, as we have said, tends to establish that appellants were innocent purchasers, and consequently that they were not

guilty of any wrongful or negligent conduct through
which the occasion of loss arose.   If the deed was stolen
from appellee through no fault of hers and placed of
record without her knowledge or consent, it cannot be
said that prior to the time when she obtained knowl-
edge of the facts she was guilty of any wrongful or neg-
ligent conduct resspecting it.   If she entrusted the deed
to Crawford, it can very consistently be argued that the
resultant loss to some one was occasioned by her agency.
In either case, she having acquired full knowledge of
the facts on or about July 31, the question is presented
whether her conduct or inaction thereafter under all
the circumstances, including the element of time,
amounted to such negligence or such a breach of duty
owing to others as that it may be said that she by her
conduct enabled the injury to be inflicted, and that as a
consequence she was estopped to deny the validity of
the deed as against appellants.

It has frequently been held that where a person
named as grantee in a deed, in the absence of a legal
delivery or of an intent to deliver it, wrongfully
10. obtains possession of it and causes it to be re-
corded, the grantor, having or obtaining knowl-
edge of the facts, is required to take steps promptly to
prevent innocent third persons from acting to their
prejudice in reliance on the record, and that by failing
to do so, such grantor will be held guilty of such laches
or such negligent conduct as will stand as a barrier to
his asserting title as against such an innocent pur-
chaser.   See the following:   *Mays* v. *Shields* (1903),
117 Ga. 814, 45 S. E. 68; *Pittman* v. *Sofley* (1872), 64
Ill. 155; *Haven* v. *Kramer* (1875), 41 Ia. 382; *McCon-
nell* v. *Rowland* (1900), 48 W. Va. 276, 37 S. E. 586;
*Costello* v. *Meade* (1878), 55 How. Prac. (N. Y.) 356;
*Johnson* v. *Erlandson* (1905), 14 N. D. 518, 105 N. W.

722; *Breeze* v. *Brooks* (1892), 22 L. R. A. 256, note; *Quick* v. *Milligan* (1886), 108 Ind. 419, 9 N. E. 392, 58 Am. Rep. 49. In a number of the foregoing some importance is attached to the fact that possession followed the conveyances involved, but we do not regard such element as controlling where, as here, the real estate conveyed is unoccupied and no person is in the actual visible possession of it.

Appellants relied on estoppel to defeat appellee's claim. The burden was therefore on them to establish all the facts necessary to constitute it. 16 Cyc 1; 10 R. C. L. 845. Appellee knew on July 31 that the record title had been in Crawford and that it was then in Allen. She knew also that she had not conveyed the lots. She was inactive for several weeks and in the meantime appellants had parted with their money and property on the faith of the record. These facts were established. In our judgment they were sufficient *prima facie* to constitute estoppel. If there were mitigating circumstances excusing appellee, and from a consideration of which it might not be said that she was guilty of negligence in the premises and that therefore estoppel might not be invoked against her, they were peculiarly within her knowledge. The court by the instruction under consideration placed on appellants the burden of establishing the nonexistence of such mitigating circumstances. It is our judgment that as to such mitigating facts and circumstances, if they existed, it was incumbent on appellee to go forward with the proof, and as a consequence, especially in view of the state of the evidence generally, that the court erred in the instruction. "Delay in the assertion of a right, unless satisfactorily explained, operates in equity as evidence of assent, acquiescence or waiver." *Connell* v. *Connell* (1889), 32 W. Va. 319, 9 S. E. 252.

Other questions presented are not decided as they may not arise on a new trial.

The judgment is reversed, with instructions to sustain the motion for a new trial.

NOTE.—Reported in 115 N. E. 96. Estoppel: by acquiescence, 134 Am. St. 1024, 16 Cyc 773; by silence, 16 Cyc 759; by laches, 16 Cyc 761.