Kenneth R. WARNER, Sr., and Mary Carolyn Warner, Appellants (Defendants Below)

v.

RIDDELL NATIONAL BANK, an Indiana Corporation, Appellee (Plaintiff Below)

No. 1–125A30.

Court of Appeals of Indiana, First District.

Sept. 17, 1985.

Rehearing Denied Oct. 18, 1985.

Buena Chaney, Mann, Chaney, Johnson, Goodwin & Williams, Terre Haute, for appellants.

Arnold H. Brames, Brames, Bopp, Haynes & Abel, Terre Haute, for appellee.

ROBERTSON, Judge.

Defendants-appellants Kenneth Warner, Sr., and Mary Warner (Warners) appeal from a judgment of foreclosure entered in favor of plaintiff-appellee Riddell National Bank (Bank).

We affirm.

The Warners and their son, Kenneth Warner, Jr. (Junior), were partners in a farming operation. On several occasions, Junior obtained loans from the Bank to cover the expenses of the farming partnership. The loans were evidenced by a promissory note for $13,000 due March 28, 1980, and a promissory note for $27,010 due May 29, 1980.

The Warners and Junior were also partners in two Dairy Queen franchise operations. Junior negotiated with the Bank to borrow $75,000 for the operating expenses of the Dairy Queens. The Bank agreed to make the loan provided the Warners signed the note with Junior and furnished as security a blank note, blank mortgage and abstract to their eighty-acre farm. Junior obtained his parents' signatures on the note for $75,075, the blank note and the blank mortgage. Junior then delivered the notes, mortgage and abstract to the Bank.

In the spring of 1980, Junior represented to the Bank that he would be unable to pay the $13,000 note due March 28, 1980, and the $27,010 note due May 29, 1980, and that he and his parents would be unable to make the interest payment due on the $75,-075 note. Junior inquired whether the three notes could be combined into the signed blank note secured by the signed blank mortgage on the Warners' eighty acres. On May 1, 1980, the blank note was filled out for $122,714.54, and the mortgage was completed and recorded. The default on the $122,714.54 note gave rise to the instant foreclosure suit.

On appeal, the Warners raise thirteen issues which are consolidated and restated as follows:

1) Whether the trial court erred in enforcing the promissory note for $122,714.54 and the mortgage securing it;

2) Whether the trial court's finding that there was an equitable mortgage was contrary to law;

3) Whether the trial court's conclusion that Junior was acting as an agent of the Warners was contrary to the evidence;

. 4) Whether the court erred in finding that the Warners were equitably estopped from denying the debt, mortgage and lien;

5) Whether the evidence supported the trial court's finding that the $75,075 note contemplated interest at 15%, which interest was properly included in the promissory note for $122,714.54.

ISSUE ONE:

■ The Warners maintain that the $122,714.54 note and mortgage were unenforceable because there was no consideration for the note. To support their argument, the Warners stress that the Bank did not surrender the three notes that were consolidated into the new promissory note for $122,714.54. The Indiana Supreme Court addressed and dismissed a similar argument in *Perrin v. Royal*, (1873) 42 Ind. 132:

> The old notes, or the debts evidenced thereby, furnished an ample consideration for the execution of the new, whether the old ones were surrendered at the time, or not. Now, the new note operated as a satisfaction of the old ones, or it did not. If it did not, the plaintiffs had a right to retain them as subsisting liabilities, and to sue upon them in case the new note should not be paid at maturity. If, on the other hand, the new note operated as a satisfaction of the old, the fact that the plaintiffs retained them as subsidiary liabilities could not prevent them from recovering on the new. The mere retention by the plaintiffs of the old notes was a matter of no importance as affecting their right to recover on the new. If the old notes were satisfied by the new one, any claim upon them by the plaintiffs as subsisting liabilities would,

of course, be unfounded; but it is not perceived how such mistaken claim on their part could prevent their recovery upon a legal and valid demand.

*Id.* at 133.

The Warners' emphasis on the Bank's retention of the old notes is not persuasive. There was consideration for the execution of the new promissory note in the amount of $122,714.54.

ISSUE TWO:

In the second issue raised on appeal, the Warners challenge the trial court's Finding of Fact No. 28: "The act of delivery of the abstract from Warners, Sr. to Warner, Jr. for delivery to the Bank constituted an equitable mortgage on said real estate for any amounts of money not paid to the Bank by the Warners, Sr." The Warners assert that the delivery of the abstract failed to meet the required elements of the doctrine of equitable mortgages.

■ In accordance with the maxim that equity regards as done that which ought to be done, an equitable mortgage is created when a party promises in the future to execute and give a mortgage on specific property. 59 C.J.S. *Mortgages* § 15. For an agreement to give a mortgage to be considered an equitable mortgage, the property to which the lien is to attach must be clearly identified. *Id.* The Warners agreed to give a mortgage by signing the blank note and mortgage with the understanding that the Bank would have immediate authority to fill in the documents if the Bank deemed itself insecure. The abstract delivered to the Bank clearly described the property to be charged with the lien. Thus, the delivery of the blank note, blank mortgage and abstract disclosed a promise to give a mortgage on the Warners' eighty-acre farm.

The court of appeals will not set aside the findings of the trial court unless the findings are clearly erroneous. *Litzelswope v. Mitchell,* (1983) Ind.App., 451 N.E.2d 366. The trial court's finding of an equitable mortgage withstands such appellate review.

ISSUE THREE:

■ The Warners contend that the evidence does not support the conclusion that Junior was acting as their agent in executing the $122,714.54 note and mortgage. The standard of review for sufficiency claims is well-established. The court of appeals will neither reweigh the evidence nor assess the credibility of witnesses, but will examine that evidence most favorable to the appellee and the reasonable inferences to be drawn therefrom. *Trinity Lutheran Church v. Miller*, (1983) Ind.App., 451 N.E.2d 1099. The evidence most favorable to the Bank indicates that Junior was cloaked with apparent authority to negotiate the terms of the $122,714.54 note and mortgage.

■ Apparent authority is that authority which a third person reasonably believes the agent to possess because of some manifestation from his principal. *Herald Telephone v. Fatouros*, (1982) Ind.App., 431 N.E.2d 171, 175. Placing the agent in a position to perform acts or make representations which appear reasonable to a third person is sufficient manifestation to endow the agent with apparent authority. *Id.* When Junior approached the Bank with a request to combine three existing notes into a new promissory note secured by a mortgage, his acts appeared reasonable to the Bank. The Warners had endowed Junior with apparent authority when they placed Junior in the position of sole negotiator for the $75,000 loan. The Warners did not communicate with the Bank during negotiations for that loan. Junior obtained from the Bank two blank notes and a blank mortgage. The Warners signed the blank instruments, one of which became the promissory note for $75,075.

■ When a principal manifests to a third party that his agent is authorized to enter negotiations or make representations on behalf of the principal, the agent is cloaked with apparent authority. *Soft Water Utilities v. Le Fevre*, (1974) 159 Ind. App. 529, 538, 308 N.E.2d 395, 399. Because the Warners relied upon Junior to negotiate and execute the $75,075 note, he was cloaked with apparent authority to enter negotiations and make representations on their behalf regarding the $122,714.54 note. The Warners' sufficiency claim is unavailing.

ISSUE FOUR:

■ The fourth allegation of reversible error focuses upon the trial court's conclusion that the Warners were estopped from denying the $122,714.54 note and mortgage. The following elements must exist to constitute equitable estoppel: there must be a false representation or concealment of material facts made with knowledge of the facts; the representation must have been made with the intention that it should be acted upon; the party to whom the representation was made must have been without knowledge or the means of knowledge of the real facts; and that party must have relied on the representation to its prejudice. *Emmco Insurance v. Pashas*, (1967) 140 Ind.App. 544, 551, 224 N.E.2d 314, 318. The Warners contend that there was no evidence of a false representation or concealment of material fact.

■■ Silence and acquiescence, when good faith requires a person to act or speak, will satisfy the first element of equitable estoppel. *Caito v. Indianapolis Produce Terminal*, (1974) 162 Ind.App. 590, 320 N.E.2d 821; *Erie-Haven, Inc. v. First Church of Christ*, (1973) 155 Ind. App. 283, 292 N.E.2d 837; *Allen v. Powell*, (1917) 65 Ind.App. 601, 115 N.E. 96. The evidence most favorable to the Bank indicates that the Warners knew in May of 1980 that the blank note and mortgage had been completed in the amount of $122,714.54. The Warners did not object to the $122,714.54 note and mortgage for a year. Because the Warners' silence during negotiation and execution of the $75,075 note indicated assent, the Bank reasonably placed a similar construction on their silence during the negotiation and execution of the new note and mortgage. Good faith required the Warners to advise the Bank that they did not agree to the terms of the

completed note and mortgage. The Warners' delay in voicing their objections operated in equity as acquiescence. *See Allen v. Powell, supra.*

In the alternative, the Warners suggest that the issue of equitable estoppel was not in the case at all, because it was not affirmatively pleaded. However, the trial court's Findings of Fact and Conclusions of Law dealt specifically with the theory, and evidence was admitted which supported the trial court's finding of equitable estoppel. *See Huff v. Travelers Indemnity Co.,* (1977) 266 Ind. 414, 363 N.E.2d 985. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Ind.Rules of Procedure, Trial Rule 15(B).

The final assertion regarding estoppel is that the Bank did not have the "clean hands" necessary to raise the equitable issue. The Warners describe the Bank's act of completing the blank note and mortgage as a breach of fiduciary duty and a manifestation of unclean hands. As discussed earlier, the Bank's conduct was consistent with the prior execution of the $75,075 note, to which the Warners assented. The Warners have failed to show that the Bank came to court with unclean hands. *See Dicus v. Ripley County Bank,* (1984) Ind.App., 471 N.E.2d 1257.

ISSUE FIVE:

The Warners argue that no evidence supported the trial court's finding that the $75,075 note bore interest of 15% payable at six month intervals. Again, the Warners' sufficiency claim must fail. The ledger side of the note showed an interest rate of 15% and stated that interest was due each July and January. Junior testified that he understood from reading the note that interest would be due after the first six months, and he so informed the Warners. Subsequently, Junior advised the Bank that he and his parents would be unable to make the interest payment due on the $75,075 note. Ample evidence supported the trial court's finding that the $75,075 note contemplated interest at 15%, which interest was properly included in the promissory note for $122,714.54.

Judgment affirmed.

RATLIFF, P.J., and NEAL, J., concur.